159 So. 483

## BIRMINGHAM TRUST & SAVINGS CO. v. MARX.

### 6 Div. 633.

Supreme Court of Alabama.
Jan. 17, 1935.

Rehearing Denied Feb. 21, 1935.

Smyer, Smyer & Bainbridge, of Birmingham, for appellant.

Cabaniss & Johnston and Jos. F. Johnston, all of Birmingham, for appellee.

BROWN, Justice.

The bill in this case was filed by the appellee, V. Hugo Marx, as the trustee named in a deed of trust executed by Plosser-Knecht Flour & Grain Company, Inc., a domestic corporation, on certain real estate and the fixtures hereto, consisting of machinery and equipment, to secure the payment of certain bonds issued by said corporation and sold and delivered to sundry persons and corporations, named in the bill, against the appellant, Birmingham Trust & Savings Company, a corporation, and said Plosser-Knecht Flour & Grain Company, Inc., to have a subsequent mortgage executed by said Plosser-Knecht Flour & Grain Company, Inc., to appellant covering the real estate embraced in the deed of trust, and other real estate, and a transfer made by separate writing of all choses in action, and tangible personal property executed by said Flour & Grain Company to appellant, to secure an existing indebtedness due by it to appellant, declared a general assignment under the provisions of section 8040 of the Code 1923, for the benefit of all of the creditors of said Flour & Grain Company.

There was a demurrer to the bill questioning its equity and sufficiency on numerous grounds, which was overruled, followed by answer of the appellant, a decree pro confesso against the Flour & Grain Company, and proof taken by depositions.

On submission for final decree on the pleadings, and the proof noted by the register, the court entered a final decree declaring that "the transfer, conveyance and mortgage executed by respondent Plosser-Knecht Flour & Grain Company, Inc., to respondent Birmingham Trust and Savings Company on July 12, 1930, was an assignment of substantially all of the property of the said Plosser-Knecht Flour & Grain Company, Inc., as security for a prior debt owing by said Plosser-Knecht Flour Company, Inc., to the transferee, respondent Birmingham Trust and Savings Company, and, as such, inured to the benefit of all the creditors of said Plosser-Knecht Flour & Grain Company, Inc., equally"; that

the respondent Birmingham Trust & Savings Company and the *bondholders named in the bill were and are all of the creditors of said Flour & Grain Company*, and entitled to share ratably in the proceeds of the tangible property, real and personal, transferred by said conveyances to the respondent Trust Company, and the proceeds of the *choses in action*, collected by the Trust & Savings Company, and entered a money decree in favor of the complainant, allegedly the representative of the bondholders, for 60.21 per cent. of the said proceeds, ascertaining the amount to be $5,869.49, and ordering the sale of the real estate located in Colbert county, by the Trust & Savings Company, as trustee, and taxing the costs against "respondent."

The appeal is from the final decree, and the questions presented for decision, by the assignments of error and argued in brief, are: (1) The right of the complainant, V. Hugo Marx, as trustee, to maintain the bill; (2) the sufficiency of the proof as showing that the assignment and mortgage embraced all or substantially all the property of the debtor; and (3) the applicability of the statute (section 8040) to *choses in action*, where the transfer is not intended by the parties thereto to operate as a general assignment for the benefit of the creditors.

We state briefly the facts alleged in the bill, and established by the proof pertinent to the stated questions:

On April 1, 1927, the Plosser-Knecht Flour & Grain Company, Inc., which in the further progress of this opinion will be referred to as the Flour & Grain Company, being desirous of borrowing money to rehabilitate and extend its plant, issued seventy bonds for $1,000 each, maturing at different dates, and bearing 6¼ per cent. interest per annum; and contemporaneously therewith executed to the complainant, V. Hugo Marx, as trustee, a mortgage or deed of trust, conveying to him the real estate upon which its plant was then situated, the machinery and fixtures therein, estimated to be worth upward of $140,000, and such other machinery and fixtures as might be placed therein and affixed to the real estate and the improvements contemplated to the plant. The bonds were delivered to the trustee to be negotiated, and were sold and passed into the hands of the holders named in the bill, but not made parties thereto.

The deed of trust conferred on the trustee broad powers, including the power of accelerating the due date of the bonds in case of de-

fault, the right to demand the possession and control of the property covered by the deed of trust, the power of foreclosure by sale of the property in case of default, to pay the legitimate expenses of the foreclosure, deduct the same from the proceeds of the sale, and distribute the balance ratably to the bondholders.

Following the grant of these general powers, section 10 of the trust deed further stipulates: "All remedies on the bonds, the coupons, or hereunder, are vested exclusively in the trustee for the equal benefit of all bondholders, unless the trustee refuses or neglects to act within a reasonable time after written request, accompanied by indemnity satisfactory to the trustee, by the holders of twenty-five per cent of the then outstanding bonds. Except as above, no bondholder or coupon holder shall have any right to institute any action at law or in equity hereon or on the bonds or their coupons, and then only for the equal benefit of all bondholders."

The Flour & Grain Company paid three of said bonds, maturing on April 1st, 1930, and the interest on all of said bonds, reducing the indebtedness to $67,000. Thereafter it defaulted in the payment of some of said bonds, and the complainant as trustee, exercising the option to accelerate the maturity of said indebtedness, gave the Flour & Grain Company notice that he had declared the entire indebtedness due, and demanded possession of the property covered by the trust deed, and its possession was delivered to him. He thereupon foreclosed under the power of sale, bid in the property at and for the sum of $25,000, deducted from this amount the expenses incident to the sale, and credited the remainder on the mortgage debt, leaving a balance of $48,100.82 due and unpaid.

The bill avers that: *"The owners and holders of said unpaid bonds,* whose names are hereinafter set forth, have delivered them to complainant *as their trustee* with authority to bring this suit in their behalf and for their benefit. The names of such owners and holders are as follows, the principal amount of bonds held by each being set opposite to their names respectively." This averment is followed by the names of the several owners and holders, twenty-four in number, with the respective amounts due each. There is nothing in the averments of the bill or the proof going to show that the complainant as trustee has either the legal or equitable title to said bonds and the indebtedness represented thereby.

The answer of the defendant Trust & Savings Company admits the execution of the mortgage to it by the Flour & Grain Company; that the same is a junior mortgage as to the property covered by the trust deed. It also admits the assignment of all the choses in action held by the Flour & Grain Company, except an indebtedness due from its president, Knecht, in the amount of about $7,500. There was evidence going to show that Knecht owned nothing aside from property exempt from the payment of said debt.

■ There can be no doubt that a debtor may make a general assignment for the benefit of his creditors and, by appropriate conveyance to that end, pass to a trustee the title to all property he may own, both real and personal, tangible and intangible, whether it be leviable under execution or not. This is an incident to the right of ownership, and what is said further in the course of this opinion is not to be taken as impinging this principle of law. Such a trust so created is clearly governed by the first clause of section 8040 of the Code, that "every general assignment made by a debtor * * * enure[s] to the benefit of all the creditors of the grantor equally." Wilson & Co. v. Phillips et al., 221 Ala. 603, 130 So. 219.

■ The mortgage and assignment involved in the case at bar were not executed and delivered as such general assignment for the benefit of all the creditors of the debtor, but were executed for the express purpose of securing an indebtedness to a single creditor; and the complainant, invoking the provisions of the statute, Code, § 8040, that "a conveyance by a debtor of substantially all of his property *subject to execution* in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors, *over the remaining creditors* of the grantor, shall be and enure to the benefit of *all the creditors* of the grantor equally," seeks to avoid the preference expressed in the transfers and have them declared a general assignment for the benefit of all the creditors. (Italics supplied.)

As observed by Brickell, C. J., under "the rule of pleading in equity, as at law, [it] can not be doubted, that the plaintiff must show an actual existing interest in the subject-matter of the suit, giving him the right to sue concerning it. The rule is stated with precision by Chilton, J., in McKinley v. Irvine, 13 Ala. 693: 'The complainant must show, by his allegations in the bill, that he is entitled to the relief which he seeks; and if he fails

to set forth every essential fact necessary to make out his title to maintain the bill, the defect will be fatal.'" Rapier v. Gulf City Paper Company, 64 Ala. 330, 340.

In the course of the opinion in that case, the learned Chief Justice, dealing with the statute on transfer of property within its influence, further observed: "The only effect of the statute is in its operation, depriving it of the character of a particular security for a particular creditor, and converting it into a general security for the equal benefit of all creditors who come in and claim under it. As between the parties, it operates according to its terms. Creditors not named in it, or those who have not assented to it, alone have the right to claim that it shall enure to the benefit of all the creditors. Holt v. Bancroft, 30 Ala. 193; Price v. Mazange, 31 Ala. 701. The assignee may enforce any and every right which springs out of it, against the assignor and all claiming under him. He will, however, stand, at the *election of creditors*, a trustee for their benefit, bound to appropriate whatever he may realize to the payment of all the just debts of the assignor. The instruments on which the statute operates, are transfers for the security of one or more creditors, to the exclusion of, or in preference to the remaining creditors; and an indispensable element is, that substantially all the property of the grantor, *subject to the payment of debts* [now changed by section 8040 of the Code, subject to execution], is thereby conveyed. * * * Whether this instrument covers substantially all the property of the makers, depends on facts not shown in the present bill. * * * Whether it can, under any state of facts, be declared a general assignment, is not a question Rapier can raise. *The creditors who are excluded, alone have rights or interests affected by it, if that is its character, and they only can ask the interference of the court so to declare it.*" Rapier v. Gulf City Paper Company, 64 Ala. 330, 342, 343. To the same effect, Anniston Loan & Trust Co. v. Ward & Co. et al., 108 Ala. 85, 18 So. 937.

■ "In bringing a bill to seek the benefit of such an assignment, all the creditors must join in the suit, or one may sue in behalf of the others, who may come in and join him." 2 Perry on Trust & Trustees, p. 1008, § 594; 5 C. J. 1259, § 423.

■ The trustee named in a deed of trust in the nature of a mortgage is vested with the legal title to the property covered by the deed of trust, and as to it he is the representative of the grantor and the holders of the indebtedness secured, and his relation is one of impartiality between them. 41 C. J. 284, § 11; Collier v. Alexander, 142 Ala. 422, 38 So. 244.

As the holder of the legal title, he may act for beneficiaries of the trust in the protection of the trust and the property, but his position is such that he cannot represent such beneficiaries in litigation entirely extraneous to the subject-matter of the trust, and especially so where the statute confers the right to intervene only on the beneficiary—the creditors. Nelson v. Hubbard (Adams Cotton Mills v. Dimmick), 96 Ala. 238, 11 So. 428, 17 L. R. A. 375; 19 R. C. L. 272, § 43; 41 C. J. 285, § 12.

The purpose of the bill in the instant case is to establish and declare a trust as to property not covered by the deed of trust in which the complainant is named trustee, and the litigation is wholly extraneous to the trust which he represents, and only the creditors, as we have shown, have the right to intervene. The trustee in the deed of trust is neither a necessary nor proper party to such proceedings and cannot maintain the bill.

■ We entertain no doubt that the omission of the indebtedness due from Knecht to the Flour & Grain Company—a mere *chose in action*—not subject to levy and sale under execution, in no way affected the rights of the creditors of the Flour & Grain Company, to intervene under the statute to have the conveyance as to leviable property declared an assignment for the benefit of creditors, but there is serious doubt as to whether the assignment of *choses in action* not being subject to execution is not entirely excluded from the operation of the statute as amended by the act approved February 4, 1903 (page 36), and brought forward into the Code of 1907 as section 4295, now section 8040 of the Code of 1923. The act above referred to is not amendatory, but original in form. However, the exigencies of this case do not require further discussion of that question.

Our judgment is that the appellee, for reasons stated, was not entitled to maintain the bill, and that the decree of the circuit court, in equity, is laid in error and must be reversed, and a decree will be here rendered dismissing the bill.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

## On Rehearing.

BROWN, Justice.

The appellee now asserts that his right to maintain the bill was not rested upon the fact that he was named as the trustee in the deed of trust executed by the Flour & Grain Company, but solely on the fact that the bonds were delivered to him for the purpose of filing and maintaining this bill, and as a predicate for this contention, refers to the averments of the bill: "The *owners and holders* of said unpaid bonds, whose names are hereinafter set forth, have delivered them to complainant as their trustee with authority to bring this suit in their behalf and for their benefit. The names of *such owners and holders* are as follows, the principal amount of bonds held by each being set opposite to their names, respectively." These averments are followed by a list of the owners and holders and the principal amount due each. (Italics supplied.)

Mr. Marx, the complainant, testified: "The owners and holders of said unpaid bonds have delivered them to me as their trustee with authority to bring this suit in their behalf and for their benefit. To the best of my recollection, the names of the *owners and holders* of the sixty-seven unpaid bonds together with the amount of the bonds *owned by each* are correctly set forth in paragraph four of the bill of complaint." (Italics supplied.)

These averments and this proof clearly negative the idea that said bonds were delivered to Marx for the purpose and with the intent of investing him with the title, legal or equitable, thereto, or any beneficial interest therein. These averments and this evidence show that the named bondholders have the legal title to the bonds, the indebtedness represented by them, and are the sole beneficial owners thereof.

It is essential to the existence of a trust in property that the legal or equitable title be in one person with the benefit and use to another. Where one person has both the legal title and the beneficial ownership, there is no trust. 26 R. C. L. 1167, § 1.

In Carey et al. v. Brown, 92 U. S. 171, 23 L. Ed. 469, cited by appellee in his brief on application for rehearing, the notes were transferred to the complainant so as to invest him with the legal title, and the bill so averred.

In Hall & Farley, Trustees v. Henderson, 126 Ala. 449, 28 So. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53, the Farley National Bank, to whom the property had been restored by order of the Comptroller of the Currency, and the receiver discharged, "assigned and transferred to the complainants, J. L. Hall and L. B. Farley, as trustees, the said debt of the Alabama Terminal & Improvement Company," investing them with the legal title thereto. Henderson et al. v. Hall et al., 134 Ala. 455, 32 So. 840, 63 L. R. A. 673. It may be noted, also, that before the litigation was concluded, the eminent lawyers representing the complainants made the judgment creditor, the cestui que trust, a party complainant. See Henderson v. Hall, 134 Ala. 455, 32 So. 840, 63 L. R. A. 673.

A "naked power"—a power not coupled with an interest—does not authorize the person upon whom it is conferred the right to prosecute an action a law, nor a suit in equity. Therefore, if it should be conceded that a trustee may in any case maintain a bill under the statute to have a conveyance declared a general assignment, the complainant here has not shown such right.

The complainant not being entitled to maintain the bill, the other questions argued need not be considered.

Application overruled.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.