Appellant/defendant First Alabama Bank of Tuscaloosa, a national banking association, brings this appeal as executor and trustee of the Last Will and Testament of Mary Webb Cleveland, deceased. The appeal is from a final decree in a declaratory judgment action which declared valid, and not voidab initio, a trust (the Webb Trust) established by Mrs. M.E. Webb. In declaring the Webb Trust to be valid, the trial court found the doctrine of merger as applied in this court's ruling in the case of Dunn v. Ponceler, 230 Ala. 375, 161 So. 450
(1935) was inapplicable.
We affirm the trial court's determination that the Webb Trust is valid and expressly overrule that part of the Dunn v.Ponceler decision which holds the doctrine of merger operates to invalidate a trust where two or more trustees are also the named beneficiaries of the trust.
The Bank makes two points in its argument: (1) the doctrine of merger, as applied in the Dunn case, invalidated the Webb Trust ab initio because the trust beneficiaries and trustees are identical and (2) the Webb Trust instrument employed language traditionally used to convey a fee interest and gave the trustees complete discretion to distribute corpus or income from the trust and thus created a tenancy in common among the trust beneficiaries rather than a trust.
Plaintiffs/appellees, the four children of the late Mrs. M.E. Webb: C.A. Webb, Jr., J.C. Webb, Katherine Webb Holmes, and Elizabeth Webb Arbuthnot, filed this action seeking a declaratory judgment. Appellees sued both in their individual capacities as well as in their fiduciary capacities under the Webb Trust.
The basic relief sought was a judgment declaring: (1) the trust was valid; (2) the doctrine of merger did not apply to the Webb Trust; (3) the specific case of Dunn v. Ponceler, was inapplicable to the Webb Trust; and (4) the death of Mary Webb Cleveland (a daughter of Mrs. M.E. Webb), without children surviving her, terminated all her interest in and to the income and corpus of the Webb Trust. The complaint named as defendants the First Alabama Bank of Tuscaloosa, N.A.; Charles Allison *Page 633 
Holmes, the son of Katherine Webb Holmes; Mary Elizabeth Holmes, the daughter of Katherine Webb Holmes; and Mary Arbuthnot Avery, the daughter of Elizabeth Webb Arbuthnot.
The Bank filed an answer and a counterclaim. Mary Arbuthnot Avery, Charles Allison Holmes, and Mary Elizabeth Holmes filed answers to the complaint disclaiming any interest under the Webb Trust as beneficiaries under the will of Mary Webb Cleveland; however, they did claim an interest in the Webb Trust as alternative contingent remaindermen thereunder. The counterclaim of the Bank sought to have the trial court declare the Webb Trust invalid and to enter an order and decree declaring the Estate of Mary Webb Cleveland to be entitled to an undivided one-fifth (1/5) interest in the corpus of the Webb Trust and to one-fifth (1/5) of the income resulting therefrom after 15 August 1975, the date of her death. Appellees joined issue by filing an answer to the counterclaim.
The case was submitted on written stipulation of facts and briefs. A final judgment was subsequently entered which ruled in favor of the plaintiffs/appellees. The judgment found and ruled that the clear intent of Mrs. M.E. Webb, expressed in the trust instrument, was to create a trust for the benefit of her lineal descendants. The trial court further found the Webb Trust was valid and the doctrine of merger did not apply to it; also the case of Dunn v. Ponceler was inapplicable to the Webb Trust under the circumstances of this case, and the death of Mary Webb Cleveland terminated all her interest in the Trust. After entry of that judgment the Bank's appeal ensued.
On 15 July 1940, Mrs. M.E. Webb executed a trust indenture granting to her five children, as trustees, certain property. These five children, of Mrs. Webb were C.A. Webb, Jr., J.C. Webb, Elizabeth Webb, Katherine Webb and Mary Webb. By marriage, Katherine Webb became Katherine Webb Holmes, Elizabeth Webb became Elizabeth Webb Arbuthnot, and Mary Webb, now deceased, became Mary Webb Cleveland. These same children, and the surviving children of them in the event of their death prior to termination of the trust, were designated as the beneficiaries of the Webb Trust. The trust instrument provided that the trust would terminate at the death of the last surviving trustee, but could be terminated prematurely, at any time after the death of the first trustee to die, upon unanimous consent of all trustees and all beneficiaries who were at that time sui juris. The distributive share of income and principal of each beneficiary was to go to any surviving child or children of each beneficiary and, if there were no children, be distributed to the surviving beneficiaries in equal parts at the time of the termination of the trust.
Three grandchildren of the settlor, Mrs. M.E. Webb, are presently living. They constitute contingent alternative remaindermen of the Webb Trust, and are the following individual defendants: Charles Allison Holmes, Mary Elizabeth Holmes and Mary Katherine Arbuthnot Avery. They are also the nephew and nieces of Mary Webb Cleveland as well as beneficiaries under Mrs. Cleveland's will. As individual defendants in this case, they did not join in the appeal of the Bank.
The Webb Trust contains language typically employed in the creation of trusts in Alabama. That language, conveying the property to the trustees, is:
 "* * * [to] said Trustees and their successor Trustees and assigns, forever, upon and subject however, to the trust, uses, and conditions hereinafter set out [in the Webb Trust]."
Paragraph 2 of the instrument sets forth powers of trust administration which are standard and frequently seen in trust instruments drafted according to Alabama law. The instrument provides that powers of administration are to be used in the discretion of the trustees; however, the exercise of the discretion to administer the trust was and is subject to restriction in paragraph 2 (1) of the trust instrument when it states that the powers of administration *Page 634 
must be exercised in a manner to "promote, protect, and conserve the interest of the trust and the beneficiaries thereof."
In paragraph 6 is the following provision:
 "In case one or more of the above-named beneficiaries should die prior to the termination of this trust and should not leave surviving any child or children, then in that case the remaining beneficiaries hereinabove named shall take, share and share alike, the interests of said deceased beneficiary in and to disbursements from the trust property and in and to the final distribution of said trust property."
On 15 August 1975, Mary Webb Cleveland, a daughter of Mrs. M.E. Webb and one of the trustees under the Webb Trust, died without any surviving child or children. The Last Will and Testament of Mrs. Cleveland designated the defendant/appellant Bank as executor.
In August 1977, the Bank sent a letter to the plaintiffs/appellees stating it was its position the doctrine of merger applied to the Webb Trust and that Mary Webb Cleveland owned in fee simple a twenty percent (20%) interest in the principal of the Trust at the time of her death. On 11 August 1977, Mr. Charles A. Webb, Jr., co-trustee of the Webb Trust, responded to the letter in behalf of the surviving trustees, denying the validity of the Bank's position and taking the position that the Estate of Mary Webb Cleveland had no further continuing interest in the Webb Trust corpus after her death. The different position taken by the parties resulted in this litigation.
 I
First Alabama Bank's major contention is that the case ofDunn v. Ponceler, supra, applies the doctrine of merger to trusts which have two or more trustees where those trustees are also the named beneficiaries of the trust. While we agree with First Alabama that Dunn stands for this proposition, we do not agree the doctrine of merger is correctly applied in such situations. We, therefore, overrule that portion of Dunn which supports the proposition that merger invalidates a trust where two or more trustees are also the sole beneficiaries of the trust.
In Dunn, the testator left property in trust to his wife and daughter as trustees. The income from the property was to be divided equally between the two. The trust provided the daughter would receive the corpus of the trust if she survived her mother, but if she predeceased her mother the income from the trust was to be divided equally between the mother and the daughter's heirs. On the mother's death the daughter's heirs were to receive the corpus of the trust. This court held that no valid trust was created because the doctrine of merger would merge the legal and equitable estates since the trustees and the beneficiaries were the same persons.
The doctrine of merger applies when one person becomes the simultaneous owner of identical legal and equitable interests in the same property. The equitable interest merges into the legal interest and "absolute ownership ensues, without any division into legal and equitable interests." Bogert, Trustsand Trustees (2d Ed.) § 129. For example, a trustee, who holds fee simple title in trust in certain real estate which makes up the corpus of a trust may become the absolute owner of that realty if he becomes the beneficiary of the trust, or in other words, the owner of the equitable interest. The doctrine of merger would merge the legal interest into the equitable interest, since the same person now holds both interests, consequently destroying the trust. The doctrine of merger, however, is an equitable doctrine and would not apply if "serious injustice would result or if the settlor's intent would be frustrated." Bogert, Trusts and Trustees (2d Ed.) § 129.
The key ingredient to the application of the doctrine of merger is that one person holds both the equitable and legal interests or estates. Enlarging the key ingredient to include situations where there are two or more trustees is where theDunn decision misapplied the doctrine, and why we now overrule such of the Dunn case as *Page 635 
held to that effect. The great weight of authority supports the proposition that the doctrine of merger cannot apply to trusts where there are two or more trustees. This is demonstrated by the following excerpts from the leading treatises on trusts and the two Restatements:
"* * * For example, if there is a single trustee and he is also sole beneficiary, the legal interest may well be a legal fee simple owned in severalty and the equitable interest may be an equitable fee simple owned in severalty. Hence the stage may be set for merger. But if there are two or more trustees or two or more beneficiaries a diversity arises. The two or more trustees hold their interest (generally legal) as joint tenants, title vesting in them as a unit, while the beneficiaries hold their equitable interests as tenants in common in almost all cases. This slight difference in the character of legal and equitable interests may justify the refusal to apply merger. Even if A and B hold a legal fee as trustees for A and B who have the complete equitable interest, the difference between joint tenancy and tenancy in common may be sufficient grounds for not applying the doctrine of merger." (Citations omitted). Bogert,Trusts and Trustees, (2d Ed.) § 129 (p. 622).
"(5) If A and B are appointed trustees for A and B and for no other beneficiaries there is agreement that the trust is valid and no merger occurs. It may be argued that the different character of the holdings prevents merger, since A and B as trustees are joint tenants and as beneficiaries each owns an interest in common. Furthermore, from the point of view of obligation, A may be under an obligation to B and B to A so that the difficulty about identity of obligor and obligee does not enter.
"The argument that a duality of interest in one or more trustees should prevent the attempted creation of an express trust from being successful is extremely weak. In one of the worst possible cases, where there is absolute identity of personnel between trustees and beneficiaries, the obtaining of unbiased administration may be difficult and the court may determine that it is proper to appoint new trustees. But the trustees are capable of taking, holding and administering. The equitable gift is perfect. Defects in arrangements for execution of the trust should not be vital to the creation. If the trustee with a dual interest (an interest as trustee and also as beneficiary) is only one of several trustees, the trustees not interested in beneficiaries will serve as a check on the interested trustee and secure proper administration.
* * * * * *
"In the case of a single trustee who is also the sole beneficiary, there is force in the argument that the attempted trust ought to fail for lack of an obligation. A man cannot be under a duty to himself. A trust necessarily implies an equitable obligation as to the use of property. Hence the trustee (obligor) must be a different person from the beneficiary (obligee). If there are two or more trustees, the objection does not seem as difficult to meet. If A and B are trustees for A and B, there is room for an obligation between A as trustee and B as beneficiary, and between B as trustee and A as beneficiary, or between A and B as a unit as trustees and A as a beneficiary on the one side and B as a beneficiary on the other. If A and B are trustees for A, or A is trustee for A and B, or A and B are trustees for A and C, or A and B are trustees for A and B, the existence of two distinct persons necessary for an obligation may be worked out along similar lines." (Citations omitted). Bogert, Trusts and Trustees (2d Ed.) § 129 (5) (pp. 629 631).
"* * * Where there are several trustees or several beneficiaries, the trust is valid even though one or more of the trustees may also be beneficiaries of the trust. The difficulty in the way of the enforcement of the trust which exists where the sole trustee is also sole beneficiary, namely that a man cannot owe legal duties to himself, is not present where two or more persons are involved.* * *
* * * * * *
"In some of the cases, we shall see, in which a beneficiary of a trust is also a trustee, the courts have said that there is a *Page 636 
merger, or a partial merger, of the equitable interest of the trustee-beneficiary in his legal interest. It would seem, however, that except where there is one person who has the whole legal and beneficial interest, there is no reason why the intention of the creator of the trust should be defeated by holding that the equitable interest is merged. Not infrequently the courts, and more frequently writers of treaties, have talked loosely of the doctrine of merger, and in so doing have been so confused in their thinking as to cite as in point cases in which a life beneficiary acquires the beneficial interest in remainder, but where the beneficiary is not the trustee or one of the trustees. In such a case it may be said that there is a merger of the beneficial life interest in the beneficial interest in remainder. The result is that the person who has become sole beneficiary may be entitled to terminate the trust and to compel the trustee to convey the trust property to him. Even in such a case it is not helpful to speak of the doctrine of merger." (Citations omitted). Scott on Trusts (3d Ed.) § 99.1 (pp. 797-799).
"* * * A trust may be created in which the trustees are A and B and the beneficiaries are also A and B. In such a case it might be argued that A and B hold the property free of trust. It has, indeed, been held in some cases that in such a situation there is no trust, with the result that either may insist upon partition against the will of the other and contrary to the expressed intention of the settlor. It would seem, however, that there is no good reason for thus defeating the intention of the settlor. A rule which would defeat the intention of the settlor on the ground that there is necessarily a merger of the equitable in the legal interest would be purely arbitrary. There is no substantial objection to the view that there is a separation of the legal and equitable interests even though the beneficiaries are also trustees. In such a case each of the beneficiaries has an equitable interest of the character which the settlor intended to give him, unless to give effect to the settlor's intention is against public policy. There is no reason to give the beneficiaries a different kind of interest from that which they would have had if a third person had been named as trustee. Not only is the trust not automatically extinguished because of the identity of the beneficiaries and trustees, but there is no reason why any beneficiary should have power to terminate the trust without the consent of the others, if this would be contrary to the intention of the settlor. Even if all the beneficiaries consent, they cannot compel the termination of the trust if its continuance is necessary to carry out a material purpose of the trust.
"It would seem to be the better view, therefore, that an intended trust is effectively created although the trustees and beneficiaries are the same persons, and that a valid trust is not extinguished merely because the trustees and beneficiaries later become identical. The mere fact that A and B originally are or later become the trustees of a trust of which the beneficiaries are A and B is not a sufficient reason for terminating the trust if either does not consent or if such termination would be contrary to the intention of the settlor in creating the trust." (Citations omitted). Scott on Trusts
(3d Ed.) § 99.5 (pp. 811-813)
"(4) If there are several trustees of a trust, the trustees may be the beneficiaries of the trust.
* * * * * *
"Illustration to Subsection (4):
 "4. A transfers property to B and C in trust for B and C.A trust is created." Restatement (Second) of Trusts, § 115 (4) and comment to § 115 (4).
 "(4) If there are several beneficiaries of a trust, the beneficiaries may be the trustees." Restatement (Second) of Trusts, § 99 (4).
 "(4) If there are several trustees of a trust, the trustees may be the beneficiaries of the trust." Restatement (First) of Trusts, § 115 (4).
 "(4) If there are several beneficiaries of a trust, the beneficiaries may be the trustees." Restatement (First) of Trusts, § 99 (4). *Page 637 
It is both clear and logical that the doctrine of merger does not apply to a trust when there are multiple trustees. For this reason the Dunn decision has been criticized. We agree with Professor Scott's criticism and analysis of the Dunn case:
 "In Dunn v. Ponceler a testator left his property to his wife and daughter as trustees in trust to divide the income equally between them. The daughter was to take the property if her mother should predecease her, and if she should predecease her mother the income was to be equally divided between the mother and the daughter's heirs and on the mother's death the daughter's heirs were to take the property. The court held that no trust was created, because the trustees and beneficiaries were the same persons, and that the daughter took a legal interest in fee simple subject to her mother's legal life estate in one half of the property. Accordingly, it was held that a creditor who had secured a judgment against the mother and daughter jointly could levy execution on the property. The court said that it was immaterial that the testator intended to create an active trust; in spite of his intention there was a merger of the equitable and legal estates. It is submitted that no principle of public policy required the extinguishment of the intended trust and the defeat of the testator's intention. The court, indeed, did not invoke any principle of policy, but thought that the result reached was required by a technical rule as to merger. There is no reason, however, requiring a merger merely because the two beneficiaries were also named as trustees. Since no spendthrift trust was created, however, the creditor could have reached the equitable interests of the beneficiaries even though the trusts were valid; and the only criticism of the result reached by the court is that the creditor should have proceeded by equitable execution and not by legal execution. The ground for its decision, namely that there cannot be a trust in which two or more beneficiaries are also the trustees, is unfortunate." Scott on Trusts (3d Ed.) § 99.5 (pp. 815 816).
The overruling of that part of Dunn v. Ponceler dealing with merger will not greatly affect the law of trusts in Alabama since this court has impliedly overruled Dunn in other cases. In Sisson v. Swift, 243 Ala. 289, 9 So.2d 891 (1942), this court refused to apply the doctrine of merger and noted that the doctrine of merger does not apply where a trustee is also a beneficiary in only a partial interest. Sisson described the doctrine of merger in terms of the same person owning both the legal and equitable estates. In the case of Black v. Black,286 Ala. 233, 238 So.2d 861 (1970), this court again refused to apply the doctrine of merger to a trust where three of the seven beneficiaries of the trust were also trustees. Again, this court described the merger doctrine in terms of one person acquiring or holding both legal and equitable interest. TheBlack court made the following statement:
 "The fact that the persons named as executor (trustees) are also beneficiaries does not affect the validity of the trust. It is true that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest, but a cestui que trust, a beneficiary, is not prohibited from occupying the position of trustee for his own benefit where he is a trustee for others as well as for himself." 286 Ala. at 239, 238 So.2d at 866.
Both Sisson and Black indicate this court had already adopted the majority rule concerning the doctrine of merger, with regard to multiple trustees, prior to this decision, thus abandoning the Dunn application of the merger doctrine.
Because we now expressly hold the doctrine of merger does not apply to trusts with multiple trustees, the Webb Trust is a valid trust. Consequently, all of Mary Webb Cleveland's interest in the trust terminated upon her death without surviving children as provided by the trust instrument.
 II
The Bank's second point is without merit. In essence it claims that certain *Page 638 
language used in the trust instrument is also usually used in deeds conveying a fee simple; therefore, the trust instrument did not create a trust but in fact created a tenancy in common among the trustees. This court has held that no particular form of words in a trust instrument is required to create a trust, but any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice if the nature, subject matter, and objects of the trust are manifested with reasonable certainty by the instrument.Black v. Black, supra; Hodge v. Joy, 207 Ala. 198, 92 So. 171
(1921). The basic criterion is whether the settlor intended to create a trust. In this case the parties stipulated to the fact that Mrs. M.E. Webb, the settlor, intended to create a trust by the instrument which she executed. Also the word "trust" is abundantly used throughout the instrument, further manifesting the intent of the settlor to create a trust.
There is also no merit in the Bank's argument that the trust instrument gave the trustees too much discretion in administering the trust and thus created a tenancy in common among the trustees. Because the discretion of the trustees was limited by ascertainable standards we need not further address that argument.
For the reasons assigned the judgment below is affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and BEATTY, JJ., concur.